LOTTINGER, Judge.
As the trial judge in this matter has rendered written reasons for judgment which adequately disposes of all the factual and legal questions presented, we adopt them as our own, viz.:
“This action is one sounding in tort wherein the plaintiff seeks the recovery of substantial damages from the defendant for injuries received by the plaintiff on November 10, 1950, while working as a machinist in thé Tisdale Machine Shop on Columbia Street in Bogalusa, Louisiana.
“The allegations of the petition show that on the above mentioned date while the plaintiff was engaged in his work as a machinist the defendant Seal came to the plaintiff’s place of employment and presented the petitioner with what is known as a re-loader or re-sizer which is used for the purpose of re-sizing cartridges or shells to fit into a rifle, and in otie end of this re-sizer or re-loader there was a shell or cartridge which' was stuck and which contained a live cap, and that in the other end of said' re-sizér ór re-loader'there was a plunger which had 'been used by the defendant in an attempt to dislodge this empty shell from the re-sizer, .and that it was likewise stuck; that the defendant presented the said re-loader in its above mentioned state to the plaintiff for the purpose of having the shell and the plunger removed from said reloader; that plaintiff having had much experience with cartridges and ammunition during his military service was interested in knowing whether the loaded or live cap was all the explosive material that was contained in said re-loader. He then being assured that that was all the explosive material in said re-loader, the plaintiff undertook to disengage the shell and the punch from the re-loader, .and proceeded to remove the loaded live cap from one end *382 thereof with a hack saw’ by sawing off a part of the • cartridge; that after sawing off this cap the re-loader was secured in a vise and he inserted an easy out, which is a tool common to machine shops, with the purpose of removing the empty shell, and that in his effort to do this he struck a light blow to the wrench and tool inserted in the re-loader and a great explosion. occurred, which caused injuries to the petitioner which form the basis of this suit.
“It is further alleged that the plaintiff, exercised due care in handling the re-loader given to him by the defendant and that he was experienced in working with such materials and that he was in no way guilty of negligence, nor did he-in any way contribute to said, explosion, and that if it had not been for the false representations of the defendant that there was no other explosive material in said cartridge other than the live cap, then the resulting accident would not have happened. It is, of course, these representations of the defendant which the plaintiff surmises constituted negligence and which he alleges to be the proximate cause' of this accident.
“The defendant in answer denies .he was guilty of any negligence or false representations in connection with this matter; the defendant’s hobby consisted of target shooting, and in connection therewith he did not buy loaded shells for his rifles, and. bought empty cases or cartridges and loaded them himself. It seems not every empty cartridge, even though it is the same caliber as the rifle, will exactly fit the rifle bore, and the re-sizer or re-loader is used for the purpose of re-sizing the shell in order that it will perfectly fit the bore of the rifle.
“On the date of November 10, 1950, the defendant was engaged in re-sizing one of his shells in the re-loader, which shell was empty except for the fact it had a live cap in the end thereof, which live cap contained highly explosive material; that in attempting to re-size this empty shell it became stuck in the end of the re-loader, and in order to remove the shell from the end of the re-loader the defendant obtained a punch and drove it into the re-loader and into the empty cartridge from the other end of said re-loader, but was unsuccessful in removing the empty' cartridge, and as a matter of fact, 'stuck the punch into the end of the re-loader; that being unable to dislodge either shell or the punch, he then carried it to the plaintiff at tire machine shop, at which time he advised the plaintiff about the live cap in the end of the shell, and further advised him he feared there might be damage to said live cap by the driving of the punch into the shell, and that the primer powder might have spilled into the empty shell from the live cap; that irrespective of these instructions to the plaintiff, the plaintiff then proceeded to saw off the end of the shell and take an easy out or tool, and placed it in the end of the shell and hit it with a hammer in order to remove it, and it was this action of the plaintiff which caused the explosion.
“The answer further' shows the plaintiff told the defendant he was an expert with powder and ammunition, and it is accordingly further set forth in the answer the defendant was without fault in the premises and the proximate cause of the accident, and any injury to the plaintiff was his own fault and negligence.
“These particular acts of negligence on the part of the plaintiff are.set forth in Article 28 of the answer as follows:
“(1) In undertaking and agreeing to a hazardous piece of work well knowing the same was hazardous in the extreme.
“(2) In improperly and unskiílfully saw-ingoff the end of the jammed cartridge case while the same was contained in the re-loader.
“(3) In not heeding the warning, plain to his eyes, that the punch which had been hammered into the cap or primer end of the encased cartridge might have caused some of the explosive contained in the live cap or primer to have spilled over into the body of the encased cartridge.
“(4) In not exercising • the expert skill and knowledge which the plaintiff claimed to have possessed.
“(5) In striking a blow to the cartridge case which the plaintiff knew, or should *383 have known, could have contained explosive substances.
“As is usual in cases of this character the testimony is very conflicting.. . On the one hand, the defendant claims he carried this re-loader with the cartridge and punch contained in it to the plaintiff for the purpose of having the cartridge removed, and that when asked if the cartridge contained any explosive material he did tell the plain■tiff that it contained a live cap or primer, ‘but that he had used a punch in attempting to remove this primer and he feared some of the explosive material from this live cap or primer had spilled over into the case of the shell. On the other hand, the plaintiff admits that the defendant did tell him about the live cap being in this 'shell or cartridge, but told him this was the only explosive'material there was in the shell; that as a result thereof he decided that cutting off this live cap would remove all danger in connection with the work in removing the rest of' the shell or cartridge; he specifically denies the defendant told him the punch might have struck the primer and some of the explosive might have spilled into the empty shell. There was only one other witness at the time of the conversation between the plaintiff and the defendant, and this witness, Ragland, heard the defendant tell the plaintiff about the live cap being in the shell, but he did not hear any conversation relative to the punch that might have damaged the primer in said shell. His testimony convinces me, however, this conversation could have taken place without him having heard it. Further than this, I note that even though the plaintiff denied that he struck the tool which he placed into the empty shell with a hammer after removing tlie live cap, I note from Ragland’s testimony he saw the plaintiff strike this tool with a hammer just prior to the explosion, and I am satisfied the striking of this tool with the hammer caused a spark to ignite which set fire to the highly explosive powder, that had spilled over into the empty shell from the primer, or the live cap; I am further of the opinion that this explosive powder spilled over into the empty cap or shell at the time the defendant was attempting to remove the empty shell from the .re-loader with the punch which he stuck in said shell.
“While it is true the plaintiff seeks to recover herein as a result of the false representations made by the defendant to the plaintiff, I am of the opinion his cause of action is grounded on Article 2315 of the LSA-Civil Code which provides in part as follows':
“ 'Every act whatever of man that causes damage to another, obliges him by whose fault it happened to repair it * . *
“The controlling word in this article of the Code is the word ‘fault’ which was so aptly pointed out. in the case of Olivier v. Majors, 145 La. p. 815, 83 So. p. 23. Thus, in order to. determine whether or not this plaintiff can recover it must be ascertained whether or. not the defendant was at fault under the circumstances above delineated.
“In dealing with this problem it must be borne in mind that the plaintiff has admitted that he had a great deal of experience in working with cartridges and ammunition and that in accepting the work to remove this empty cartridge from the re-loader he was doing so as an expert workman and not as a person without knowledge-of the degree of danger of his undertaking. While he has denied the defendant told him the plunger might have struck the live cap or primer in the top of this shell causing some of the powder to overflow into the empty chamber, he certainly should, as an expert in dealing with cartridges and ammunition, have known that this plunger could have struck the live cap, or at least to have caused it to disintegrate and the powder spill into the empty chamber. Consequently, in sawing off the cartridge and striking the blow with the' hammer on the tool as he did, which caused the explosion, he assumed the risk of such undertaking, and it was his action which was the proximate cause of his injury.
“I have read the cases of James v. [Rapids] Lbr. Co., 50 La.Ann. p. 717. [23 So. 469, 44 L.R.A. 33] and Carter v. Fred *384 W. Duback Lbr. Co., 113 La. 239 [36 So. 952], cited by the plaintiff to the effect that a person with superior knowledge of a danger is under a duty to disclose that danger or to warn of the extent of the hazard or risk in the undertaking to the one he hires for said undertaking. However, a reading of these cases shows that the plaintiff in each of them was an inexperienced mill hand who was employed for ordinary work around the mill and his foreman, who had superior knowledge of an edger saw which was placed on a platform and trimmed the surplus pieces from the manufactured timber, caused the inexperienced workman without any prior knowledge of the danger of the edger saw to undertake to operate it resulting in the injury and, of course, the doctrine of superior knowledge was. applicable in those cases.
“The facts in this' case do not disclose that this' defendant had superior knowledge relative to the danger of an explosion of this shell. As a matter of fact, since the plaintiff has admitted he was experienced in dealing with cartridges and ammunition he was most assuredly guilty of negligence when after he sawed off the top of the shell not to look iri the remaining part of the shell which was plugged up by the plunger, to ascertain if any powder had spilled from the live cap which he had disengaged. Most assuredly under the circumstances he was guilty óf negligence in not looking to see whether or not any powder had spilled into this empty case, and he was further guilty of negligence in placing a tool in this empty shell and striking it a forceful blow with his hammer.
“Since I am of the opinion. it was his own act which caused his injury and he was cognizant of the dangerous propensities of said act at the time he committed it, then he cannot recover. To say the.least he assumed the risk. Moffet v. Koch, 106 La. p. 371, 31 So. p. 40.
“Accordingly, for the above and foregoing reasons the plaintiff’s suit will be dismissed at his cost.”
Judgment affirmed.